### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JENNIFER S. SIPE,

                Plaintiff,

v.                                   CIVIL ACTION NO.   3:16-6103

EQUIFAX INFORMATION SERVICES, LLC,
NISSAN MOTOR ACCEPTANCE,
XEROX EDUCATIONAL SERVICES LLC, d/b/a ACS,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Nissan Motor Acceptance's ("Nissan") Motion to Dismiss. ECF No. 31. Nissan brings this motion in accord with Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and contends that Plaintiff Jennifer Sipe ("Sipe") does not have standing to bring suit pursuant to the Fair Credit Reporting Act ("FCRA"), and in the alternative, she has failed to state a claim upon which relief can be granted. For the reasons explained in this Memorandum Opinion and Order Nissan's Motion is **GRANTED** in part and **DENIED** in part.

### I.      Background

In February 2011, Sipe purchased a new Nissan Sentra and financed the purchase through a loan from Nissan. First Am. Compl. ¶ 9, ECF No. 26. A little more than two months later Sipe declared bankruptcy. *Id.* ¶ 10. On July 14, 2011, Sipe reaffirmed her debt with Nissan and it was not discharged through bankruptcy. *Id.* ¶ 11. Sipe eventually paid off the loan with Nissan. Five years later Sipe checked her credit report with the credit reporting agencies ("CRAs") Experian, Equifax and Transunion. *Id.* ¶¶ 14–17. Equifax is a defendant in this case. Transunion and Experian

were dismissed from the case on January 3, 2017 and January 13, 2017, respectively. ECF No. 63. Each report showed that Sipe's Nissan debt was discharged through bankruptcy. First Am. Compl. ¶ 13. In an attempt to correct the error, Sipe sent each CRA a dispute letter contesting the notation that the Nissan debt was discharged and requesting that her good payment history be reflected in her credit report. *Id.* ¶¶ 18–20. Sipe further alleges that each CRA informed Nissan of the dispute. *Id.* ¶¶ 22, 24, 26. Sipe received responses from all three CRAs but information about her Nissan account was still incorrect. *Id.* ¶¶ 29–31. She sent an additional dispute letter to each CRA. *Id.* Sipe requested that Equifax report the good payment history of her Nissan account. *Id.* ¶ 29. She requested that Experian correct its erroneous notation of the Nissan account as discharged in bankruptcy. *Id.* ¶ 30. She apparently did not dispute the information related to her Nissan account contained in the Transunion report. *See id.* ¶ 31.

In response to the second dispute letters Experian stated that it believed it has received a "suspicious request" and refused to initiate a further investigation. *Id.* ¶ 39. Equifax initiated an additional investigation and deleted information related to Sipe's Nissan account from the report. *Id.* ¶ 44. Transunion, apparently upon receipt of the first letter, also deleted the payment history of the Nissan account. *Id.* ¶ 40.

Sipe alleges in her fifth cause of action that Nissan violated section 1681s-2(b) of the FCRA by "continuing to misreport plaintiff's payment history, . . . failing to fully and properly investigate the dispute, . . . failing to review all relevant information regarding the same; failing to accurately response [sic] to query . . . ; filing [sic] to correctly report the results of an accurate investigation." *Id.* ¶ 71. Sipe believes Nissan's alleged failures were both willful and negligent and caused her to suffer a "loss of credit, loss of the ability to purchase and benefit from credit[,] and was denied her fresh start." *Id.* ¶¶ 72–73.

Nissan now moves this Court to dismiss Sipe's case against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Nissan maintains that Sipe does not have standing to bring this case because she has not alleged that Nissan invaded a legally protected interest and she has not alleged concrete harm. Nissan also moves for an order dismissing Sipe's case pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure because Nissan believes the FCRA does not impose a duty to report anything to credit reporting agencies.

## II.    Discussion

A.  *Standing*

Article III of the United States Constitution imposes an "irreducible constitutional minimum" that must be satisfied in order for a party to demonstrate that it has standing to litigate any given case in federal court. To satisfy this "irreducible minimum" the plaintiff, as the party invoking federal jurisdiction here, must be able to demonstrate (1) "an injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) the injury "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ____ U.S. ____, 136 S. Ct. 1540, 1547 (2016).

Nissan raises two standing arguments with which the Court will deal in turn. The first argument raised is that Sipe has no legally protected interest in having payment history reported to consumer reporting agencies because the FCRA does not make reporting of any kind mandatory, only voluntary. The second argument claims that Sipe has not alleged any concrete harm. Accordingly, Nissan maintains, Sipe has not suffered an injury in fact.

i. *"Legally Protected Interest"*

"To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not

conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A court's inquiry to determine standing must avoid resolving the merits of the case in furtherance of the standing inquiry. "The standing doctrine, of course, depends not upon the merits, but on whether the plaintiff is the proper party to bring the suit." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975); *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Rather, "a federal court must assume *arguendo* the merits of [the plaintiff's] legal claim . . . and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) (citing *Warth*, 422 U.S. at 501-02; *Waukesha v. E.P.A.*, 320 F.3d 228, 235 (D.C. Cir. 2003)), *aff'd sub nom*, *District of Columbia v. Heller*, 554 U.S. 570 (2008).

The Court easily concludes that Sipe satisfies the legal-interest test requirement of injury in fact. "The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010) (citing 15 U.S.C. § 1681(a)). The FCRA regulates three classes of entities: CRAs, users of consumer credit reports, and, of specific importance to this opinion, entities that furnish debt information to CRAs, or "furnishers." *See* 15 U.S.C. §§ 1681–1681x. Nissan is a furnisher of debt information to CRAs. The FCRA imposes certain duties on furnishers when a consumer disputes "the completeness or accuracy of any information provided by" a furnisher to a CRA. § 1681s–2(b). Upon receipt of a dispute a furnisher is obligated to investigate the dispute and report the results of the investigation to the CRA. Where an investigation finds incomplete or inaccurate information, the furnisher must inform CRAs. And where an investigation finds incomplete or inaccurate information or cannot verify information, the furnisher must modify the information, delete it, or permanently block

reporting that information. § 1681s–2(b). If a furnisher does not comply with these duties, it may be exposed to civil liability.

Sipe's claims against Nissan, which the Court presumes to be true and meritorious for the purposes of determining standing, are premised on violations of Nissan's duty as a furnisher to report certain information and correct erroneously reported information to CRAs. It is beyond doubt that Congress has the authority to create new legal interests by statute, the invasion of which confers standing on the injured party, of course subject to Article III standing requirements. *See Warth*, 422 U.S. at 501 (observing that "[t]he . . . injury required by Article III may exist solely by virtue of statutes creating legal rights . . . ."); *Lujan*, 504 U.S. at 578 (holding that Congress may elevate to the status of legally cognizable injuries "concrete *de facto* injuries that were previously inadequate in law").

The FCRA created a legally cognizable interest in the fair and accurate reporting of a consumer's credit information. In other words, Congress deemed the fair and accurate reporting of consumer credit information an interest worthy of judicial protection. Sipe's allegations against Nissan all arise from this legally cognizable interest. Therefore, Sipe has standing to bring this suit. Whether her claim that furnishers have a duty to provide certain information to CRAs is a proper claim supported by the text of the statute goes to the merits of the case because it requires the court to determine the proper construction of the statute.

Although the court believes Nissan's first standing argument has a straightforward answer dictated by controlling precedent, the Court is aware of the confusion sown by the Supreme Court's use of the phrase "legally protected interest" in its standing opinions. To better explain the Court's decision a critical review of Supreme Court precedent is in order.

The phrase "legally protected interest" was first introduced in *Lujan*. *See* 504 U.S. at 560. The phrase is susceptible to at least two constructions. First, it could be construed to simply reformulate the already existing requirements for standing, that is the interest at issue be legally cognizable. *Id.* The other construction, which is the one advanced by Nissan and likely based on the plain meaning of the phrase, is that standing requires that "the interest be one affirmatively protected by some positive law, either common law, statutory or constitutional." *Id.* The Court believes the former reading is the most harmonious with standing jurisprudence generally.

It has been observed that *Lujan* did not announce a new standing rule but instead was an attempt to restate the existing rule for Article III standing. *Judicial Watch, Inc. v. United States Senate*, 432 F.3d 359, 363 (D.C. Cir. 2005) (Williams, J. concurring). But, for whatever reason, the Court inserted the phrase "legally protected interest" into the injury in fact test. *Id.* When applying the recapitulated standard, however, the *Lujan* Court returned to the more familiar "cognizable" to describe the interest at stake—the aesthetic interest to observe animals in the wild. *Lujan*, 504 U.S. at 562–63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for the purpose of standing."). The Court made no mention of a requirement that positive law must also recognize this interest in order for the plaintiffs to have standing. *See id.*; *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997) ("[I]n *Lujan* the Court characterized the legally protected interest element of an inquiry in fact simply as a cognizable interest and, without addressing whether the claimants had a statutory right to use or observe an animal species, concluded that the desire to do so undeniably was a cognizable interest."). Indeed, the *Lujan* Court never revisited the phrase, using "cognizable" instead of "legally protected interest" throughout the opinion. *See Lujan*, 504 U.S. at 555. It appears from a

review of its origin that "legally protected interest" may have been an unfortunate slip of the pen, rather than a fundamental shift in standing requirements.

There are at least two other considerations which support this conclusion. The first is that standing doctrine forbids a court to determine the merits of a claim before determining standing. *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153–154 (1970) (finding the legal interest test inapplicable to a standing inquiry and declaring that the standing inquiry should remain separate from merits issues); *Warth*, 422 U.S. at 501–02. Construing "legally protected" to mean that a plaintiff's claim must be supported by positive law puts the cart before the horse; that is, it invites a court to determine the merits of the case before standing is determined despite the Court insisting that jurisdictional issues are threshold issues. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any case." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). "Given the imperative of standing as a threshold to rights determinations, it would seem strange to bring in through the backdoor what *Data Processing* threw out by the front." *Judicial Watch*, 432 F.3d at 364 (Williams, J. concurring).

Second, the tripartite standing rule in *Lujan*, which purports only to restate prior cases, was cobbled together from cases that demanded only a cognizable injury, as would be expected in light of *Data Processing* and *Warth*. *See Allen v. Wright*, 468 U.S. 737, 755–56 (1984) (finding a stigmatic injury "not judicially cognizable"); *Warth*, 422 U.S. at 514 ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."); *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) (finding that the injury in fact test requires among other things an injury to a cognizable interest). Although the Court again used "legally

protected interest" in its most recent recapitulation of the standing test, the case again purported to restate the basic tripartite standing test. *See Spokeo*, 136 S. Ct. at 1547. Further, the *Spokeo* Court cited approvingly to *Lujan* to reaffirm Congress' power to create newly cognizable interests by statute the violation of which may be a basis for standing. *See id.* at 1549.

The Court accordingly believes that the proper construction of the standing test, consistent with the purpose and aim of the standing doctrine, is that the interest at stake must be a legally cognizable one. That is to say the interest must be one recognized at common law, by statute, or the Constitution but need not be a right protected by positive law. Congress created such an interest when it enacted the FCRA and Sipe's claims are cognizable as such. Whether the law will ultimately deem that interest meritorious is a separate issue.

### ii. *Concrete Harm*

Nissan's second standing argument insists that Sipe has not alleged a concrete harm as required for standing to lie. The main thrust of Nissan's argument is that any poor credit history Sipe has incurred is primarily and overwhelmingly the result of her bankruptcy. Any deficiency in her credit history introduced by Nissan's failure to report Sipe's good payment history or report it accurately, Nissan maintains, is immaterial to her credit report in light of her bankruptcy. Nissan thus contends that Sipe cannot demonstrate a concrete harm caused by Nissan and her claims are based only on a bare procedural violation. The Court cannot agree.

The Supreme Court has long held that some intangible harms may qualify as concrete injuries. *See Data Processing*, 397 U.S. at 154 (finding intangible harms to aesthetic, conservational, and recreational, as well as tangible economic harms, sufficient to support standing); *Lujan*, 504 U.S. at 563 (finding aesthetic interest in viewing animals a sufficient interest upon which standing may be based); *Spokeo*, 136 S. Ct. at 1549. Of course, tangible harms are

more easily recognized as concrete, but certain intangible harms known as procedural harms may also be concrete and therefore may also confer standing. *See id.* The Court does not interpret Supreme Court precedent as creating a categorical exclusion of procedural harms from creating standing. The Supreme Court's position is far more nuanced and takes account of Congress' ability to create legal interests with the intent to protect the public from concrete harms with statutory procedures.

The *Spokeo* Court explained that the Supreme Court's use of the term "concrete" to define the type of harm required conveys its usual meaning, that is, a "real and not abstract" harm. *Id.* at 1548. Further, Congress' judgment "plays an important role" in the determination of which intangible harms may be concrete harms. *Id.* at 1549. The Court observed that Congress "is well positioned" among the coordinate branches to identify intangible harms that meet the minimum Article III standing requirements. *Id.* Thus, "its judgment is . . . instructive and important." *Id.* Courts should therefore take notice where Congress "elevate[s] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578).

The Court was careful to remind litigants, however, that not every statutory violation results in a concrete harm. Even where a defendant has violated a right granted to a plaintiff by statute, the harm alleged must still meet Article III standing requirements, meaning it must be, among other things, a concrete harm. *Id.* In some cases, a statutory violation by itself will be a concrete harm and "a plaintiff . . . need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549–50 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Dep't*

*of Justice*, 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficient distinct injury to provide standing to sue.")). That is because in some cases Congress has conferred a procedural right in order to protect a concrete interest. *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) (citing *Spokeo*, 136 S. Ct. at 1549). Thus, "a violation of the procedure may demonstrate a sufficient risk of real harm to the underlying interest to establish a concrete injury without need to allege" some additional harm. *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

In other cases, however, a statutory violation will amount only to a bare procedural violation "divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549. As an example the Court explained that were a furnisher to report to a CRA an incorrect zip code for a consumer, the harm would very likely not be concrete, although would be, strictly speaking, a violation of the FCRA. *Id.* Consequently, even where Congress has conferred a procedural right to protect a concrete interest, as it has with the FCRA, a plaintiff may fail to allege a concrete harm where the violation of the procedural right "presents no material risk of harm to that underlying interest." *Strubel*, 842 F.3d at 190.

With these principles in mind, the Court concludes that Sipe's claims that Nissan either failed to report or inaccurately reported her payment information demonstrates a concrete injury. The accurate reporting requirements and the investigative duties imposed by the FCRA on furnishers to ensure inaccurate information is corrected or removed do not operate in a vacuum. They exist to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. § 1681. Where

these procedures have not been observed, Congress has empowered affected consumers to bring suit to protect their interest in the accurate reporting of credit information. §§ 1681o, 1681n.

Sipe alleges that either Nissan failed completely to report payment information to CRAs, or it reported inaccurate information and has not corrected the inaccuracy. A consumer whose credit report contains inaccuracies which have not been addressed by a furnisher, even after it has been notified of the inaccuracy, may be enough to show a concrete injury if those inaccuracies present a risk of harm to, or have already harmed, the consumer's ability access credit. After all, an inaccurate consumer credit report denies the consumer a right to a fair and accurate report, and undermines the ability of lenders to properly assess the credit worthiness of the consumer, thus impacting a consumer's ability to access credit at a price that reflects the true nature of his or her credit risk.

The Court need not go so far in this case, however. Sipe has alleged a concrete tangible harm in addition to Nissan's alleged statutory violations. She claims as a result of Nissan's violations of the FCRA, she has lost credit, lost the ability to purchase through the use of credit, and has been "denied her fresh start" after bankruptcy. No doubt, these alleged harms are concrete. The allegations, if true, harm her tangible economic interests. Moreover, although Nissan argues its actions played at most a minimal role in Sipe's ability to access credit in light of her bankruptcy, "the law has long permitted recovery" where harms may be difficult to prove or measure. *Spokeo*, 136 S. Ct. at 1549 (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se*) (1938)). Accordingly, the Court finds Sipe's harms to be sufficiently concrete to confer standing.

B. *12(b)(6) Motion to Dismiss*

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then

(2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to

relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements

of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework

of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as

true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56.

The complaint must contain "enough facts to state a claim to relief that is plausible on its face."

*Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for

more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility

and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

Nissan advances three bases for its Motion to Dismiss. The Court will not restate them

here, however, as the Court believes Sipe's Complaint lacks essential facts to assert a plausible

claim against Nissan.

The bulk of Sipe's Complaint is directed at the conduct of the CRA defendants after Sipe

disputed the accuracy of the information reported about her payment history of the Nissan loan.

*See* First Am. Compl. ¶¶ 13–44. Generally, Sipe alleges that she sent a dispute letter to one or the

-12-

other CRA defendants, the CRA conducted an investigation of her dispute, contacted Nissan through the "e-Oscar" system about the dispute, and updated her report, which Sipe claims are still inaccurate. *See, e.g.*, *id.* ¶¶ 40–44. Sipe does not mention any actions taken by Nissan in these allegations. Sipe even segregated her Complaint into three sections each labeled "Facts Specific to Equifax," "Facts Specific to Transunion," and "Facts Specific to Experian," respectively. There is no section devoted to Nissan's actions. Throughout the Complaint Sipe alleges no facts in connection with what Nissan did or did not do when it was informed of the dispute. Sipe's single assertion against Nissan, "Defendant . . . is failing to correct reported derogatory information and failing to accurately report Plaintiff's positive payment history to one or more consumer reporting agencies," is wholly conclusory and not entitled to the assumption of truth afforded to well-pleaded factual allegations. *See Iqbal*, 556 U.S. at 679. To avoid dismissal Sipe must allege facts such that they permit the Court to draw a reasonable inference that Nissan is liable for the alleged harms. *See id.* at 678. Sipe's singular conclusion that Nissan has failed in its statutory duties is simply not sufficient.

Notwithstanding, the Court is sensitive to Sipe's likely pre-suit position. The Court understands that information about Nissan's reaction to the dispute about the accuracy of the payment information of the Nissan loan may have been inaccessible to Sipe without discovery. Accordingly, the Court dismisses Sipe's claims against Nissan without prejudice. If during the course of discovery Sipe learns of new information that implicates Nissan, the Court will entertain a motion to amend the complaint to add Nissan as a defendant and amend the complaint to include factual allegations to support Nissan's inclusion in the suit.

C.  *Motion for Attorney's Fees*

Nissan lastly requests the Court to award it attorney's fees because Sipe's claims against Nissan are unsuccessful and were brought in bad faith or for the purposes of harassment pursuant to 15 U.S.C. §§ 1681n; 1681o. The core of Nissan's argument is that Sipe had no evidence that Nissan violated the FCRA and advanced a legal theory untethered from either the plain language of the statute or case law. Nissan supports its argument with copies of emails between its counsel and Sipe's counsel that state that Nissan did not request the CRAs delete Sipe's payment information from her credit reports and sought voluntary dismissal by Sipe without prejudice. Nissan's emails also brought to Sipe's attention that the original complaint did not even assert a cause of action against Nissan. Sipe responded with a settlement demand and eventually amended the complaint to include a cause of action against Nissan.

Both section 1681n, which imposes civil liability for willful noncompliance, and section 1681o, which imposes civil liability for negligent noncompliance, permit a court to award attorney's fees to a prevailing party where the court finds an unsuccessful pleading was brought in bad faith or for the purposes of harassment. §§ 1681n(c), 1681o(b).

As a threshold issue 1681n(c) and its identical twin 1681o(b) do not authorize imposition of attorney's fees on a party's lawyer. *Ryan v. Trans Union Corp.*, No. 99-cv-216, 2001 WL 185182, at *5 (N.D. Ill. Feb. 26, 2001) (finding after a review of case law interpreting similar attorney's fees statutes that they have been read to permit an award against a party, not a party's attorney); *Smith v. HM Wallace, Inc.*, No. 08-cv-22372, 2009 WL 3179539, at *2 (S.D. Fla. Oct. 1, 2009) (same). Any fee award is to be assessed against the party and it is the party's actions and state of mind that form the basis of a fee award. *Id.*; *Arutyunuan v. Cavalry Portfolio Servs.*, No. 12-cv-4122, 2013 WL 500452, at *3 (C.D. Cal. Feb. 11, 2013) (finding attorney's actions did not

-14-

show subjective bad faith on the part of the plaintiff because his actions did not show that the plaintiff actually knew the action was frivolous or unfounded).

"Bad faith is not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will." *Thomas v. Santander Consumer USA*, No. 1:11-cv-605, 2012 WL 263479, at *3 (M.D.N.C. Jan. 30, 2012) (quoting *Shah v. Collecto, Inc.*, No. A.2004-cv-4059, 2005 WL 2216242, at *14 (D. Md. Sept. 12, 2005) (citing *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (employing the same definition of "bad faith")). The focus of the court's inquiry must therefore be the subjective intent of, in this case, the plaintiff. *Thomas*, 2012 WL 263479 at *3 (citing *Rogers v. Johnson-Norman*, 514 F.Supp.2d 50, 52 (D.D.C. 2007)). The moving party bears the burden to show an entitlement to fees. *DeBusk v. Wachovia Bank*, No. 06-cv-0324, 2006 WL 3735963, at *4 (D. Ariz. Nov. 17, 2006).

Further, the plain language of the statute authorizes a fee award only when a pleading, motion or other paper is *filed* in bad faith or for the purposes of harassment. *Rogers*, 514 F.Supp.2d at 52; *see also Bagumyan v. Valero Energy Corp.*, No. 99-cv-216, 2001 WL 185182, at *6 (N.D. Ill. Feb. 26, 2001) (finding that an allegation that plaintiff engaged in bad faith by *maintaining* action after being provided with exculpatory information was insufficient to state a claim for attorney's fees under section 1681n(c), which applies only to papers "filed in bad faith or for purposes of harassment").

Applying this standard, the Court does not find that Sipe filed the Complaint or Amended Complaint in bad faith or for the purposes of harassment. Nissan has not provided any evidence that Sipe had the subjective intent to bring an allegedly baseless claim against it. The dispute between the parties appears to be genuine. There is no binding precedent in the Fourth Circuit that

affirmatively forecloses Sipe's legal theory. Moreover, the Court is not willing to find that she acted in bad faith when her counsel filed the Amended Complaint after Nissan stated in an email that it was not liable for Sipe's alleged harms. The Court sees no reason to punish Sipe because her attorney would not accept the representations, unsupported by any documentation, of opposing counsel. Had Nissan presented Sipe with documentation that it did not misreport her payment history and Sipe then filed her Amended Complaint charging Nissan with acts that she knew it did not do, an award of attorney's fees may be appropriate. *See Lewis v. Trans Union LLC*, No. 04-cv-6550, 2006 WL 2861059, at *4 (N.D. Ill. Sept. 29, 2006) (awarding attorney's fees where plaintiff "knew the falsity and baselessness of allegations in the complaint when it was filed.").

Further, to the extent that Nissans allegations only mention Sipe's counsel, they are insufficient to show bad faith on the part of Sipe. Sipe's counsel's conduct does not show, by itself, that Sipe acted with subjective bad faith in bringing this suit because it does not show that Sipe knew that the action was unfounded or frivolous. Lastly, the inadequacies in Sipe's Complaint are "not an adequate basis on which to find that Sipe herself filed the claim in bad faith." *Arutyunuan*, 2013 WL 500452, at *3. It may be that Sipe's counsel failed to properly investigate her good faith claims or omitted facts known to him for some reason. Either way, the finding that the Amended Complaint does not allege a plausible claim against Nissan does not show that Sipe acted with subjective bad faith.

Sipe also brings a motion for attorney's fees complaining that in attaching correspondence between counsel to its motion to dismiss it divulged confidential settlement discussion in violation of the Federal Rules of Evidence. Her motion is meritless.

She bases her motion on 1681n(c) and Federal Rule of Evidence 408. Federal Rule of Evidence 408 does not apply to motion practice. The rule, by its plain language, addresses the

*admissibility* of evidence at *trial*. *See* Fed. R. Evid. 408. Further, section 1681n(c) requires a demonstration of subjective bad faith of the defendant, not defendant's counsel, in order for a party to receive attorney's fees. Sipe has only alleged bad faith on the part of defendant's counsel. Indeed, the Court is not even convinced that filing the emails was bad faith on the part of Nissan's counsel. They simply provide information to the Court about what Sipe's position before she filed the Amended Complaint so that the Court could adequately address Nissan's request for attorney's fees.

### III.    Conclusion

Nissan's Motion to Dismiss First Amended Complaint and For Attorney's Fees is **GRANTED** in part and **DENIED** in part. ECF No. 32. The First Amended Complaint is dismissed as to Nissan **WITHOUT PREJUDICE**. Defendant Xerox Educational Services Motion to Dismiss, ECF No. 17, and Nissan's Motion to Dismiss Complaint and For Attorney's Fees, ECF No. 20, are **DENIED** as moot.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      January 20, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE